Erik F. Stidham (ISB #5483)
Jennifer M. Aiko (ISB #9275)
HOLLAND & HART LLP
800 W. Main Street, Suite 1750
Boise, ID 83702-7714
Telephone: 208.342.5000
EFStidham@hollandhart.com
JMAiko@hollandhart.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN LIVESTOCK JOURNAL, LLC, an Oklahoma limited liability company, and SUPERIOR LIVESTOCK AUCTION, LLC, an Oklahoma limited liability company, <br><br> Plaintiffs, <br><br> vs. <br><br> LOGAN M. IPSEN, an individual, and STOCK POINT MEDIA GROUP, LLC, an Idaho limited liability company, <br><br> Defendants. | Case No.:  1:26-cv-00500-REP <br><br> **MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY** |

Plaintiffs Western Livestock Journal, LLC ("WLJ") and Superior Livestock Auction, LLC ("Superior") (collectively, "Plaintiffs"), by and through their counsel of record, Holland & Hart LLP, hereby submit this Memorandum in Support of their Motion for Expedited Discovery.

## I.        INTRODUCTION

This case involves a calculated scheme by Defendant Logan M. Ipsen ("Ipsen") to misappropriate trade secrets and confidential business information from his employer, WLJ, in

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR EXPEDITED
DISCOVERY - 1

order to launch a directly competing business. Plaintiffs seek narrowly tailored expedited discovery to: (1) determine the full scope of Ipsen and Stock Point Media Group, LLC's (collectively "Defendants") misappropriation; (2) identify and preserve electronically stored information ("ESI") at imminent risk of spoliation on Ipsen's personal devices; and (3) support Plaintiffs' pending Motion for Temporary Restraining Order and Preliminary Injunction.

Good cause for expedited discovery exists here because Ipsen used personal devices—his personal phone and personal computer—to conduct WLJ business, including the very communications through which he obtained WLJ's 11,719-contact Email List under false pretenses. Those devices are in Ipsen's exclusive possession and control, with no litigation hold in place. Every day that passes increases the risk that critical evidence will be deleted, overwritten, or lost. Moreover, Defendants have demonstrated a willful disregard for Plaintiffs' rights— ignoring a cease-and-desist letter, refusing to return trade secrets, and continuing to operate a competing business built on stolen information. Under these circumstances, good cause compels expedited discovery.

## II.    FACTUAL BACKGROUND

The relevant facts are set forth in detail in Plaintiffs' concurrently filed Memorandum in Support of Motion for Temporary Restraining Order and Preliminary Injunction and supporting declarations. Plaintiffs summarize the facts most pertinent to this Motion below.

**A.    Ipsen's Position of Trust and Access to Confidential Information.**

WLJ is a 100-year-old legacy livestock industry publication. Hughes Decl., ¶ 3. In 2022, WLJ hired Ipsen as President, responsible for supervising operations, developing strategy, and reviewing budgets. *Id.*, ¶ 5. On July 21, 2022, Ipsen acknowledged WLJ's employee handbook, which imposes strict non-disclosure obligations regarding customer information and business

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR EXPEDITED
DISCOVERY - 2

operations. *Id.*, ¶ 6, Ex. A. On May 15, 2026, Ipsen was reconfirmed as "Manager" of WLJ. *Id.*, ¶ 12.

## B.      The Trade Secrets at Issue.

WLJ maintains two categories of trade secrets relevant here. First, WLJ's Subscriber List and Email List—compilations of 11,719 contacts maintained in secured platforms (SimpleCirc and Constant Contact), accessible only to specifically authorized employees. Brincefield Decl., ¶¶ 5-7; Hughes Decl., ¶¶ 13-14. Second, WLJ's confidential Strategic Plan—developed through months of C-suite financial analysis—which was disclosed to Ipsen at a closed-door meeting on April 19, 2026, solely so he could implement it as WLJ's President. Hughes Decl., ¶¶ 8-10; Lovett Decl., ¶ 5.

## C.      Ipsen's Scheme to Misappropriate and Compete.

The timeline demonstrates calculated, willful misconduct:

- March 6, 2026: While still employed as WLJ's President and Manager, Ipsen secretly formed Stock Point under Idaho law. Hughes Decl., ¶ 18, Ex. B;

- April 19, 2026: WLJ disclosed the confidential Strategic Plan to Ipsen at a closed-door meeting. *Id.*, ¶¶ 8-9; Lovett Decl., ¶ 5;

- April 19, 2026 (evening): The domain "stockpointmedia.com" was registered at approximately 7:17 p.m. CT—within hours of Ipsen learning the Strategic Plan. Lovett Decl., ¶ 6, Ex. A;

- June 3, 2026: Ipsen exported data from WLJ's SimpleCirc account at least six times—after 18 months of non-use. Hughes Decl., ¶ 21;

- June 16, 2026: Ipsen texted Mike Oldcorn requesting WLJ's complete Email List (11,719 contacts) under a pretextual "data clean up" request. Oldcorn Decl., ¶¶ 4-6, Exs. A-B;

- June 26, 2026: Ten articles published on stockpointmedia.com within two hours (coordinated "hard launch"); Ipsen solicited three WLJ salesmen via Zoom to join Stock Point. Hughes Decl., ¶¶ 26-27; Brincefield Decl., ¶ 11; and

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY - 3

- June 29, 2026: Ipsen resigned. Within 46-71 minutes, four pre-staged articles published on stockpointmedia.com. Hughes Decl., ¶¶ 17, 29.

### D.     Use of Personal Devices for Work Purposes.

Critically for this Motion, Ipsen used his personal phone and personal computer for WLJ business. He communicated with Oldcorn via text message on his personal phone to obtain the Email List. Oldcorn Decl., ¶ 4, Ex. A. He used his personal MacBook during the April 19 meeting with Lovett, on which he bookmarked the confidential Seed Stocked website. Lovett Decl., ¶ 5. Relevant ESI—including communications about Stock Point's formation, subscriber list usage, and solicitation of WLJ employees—resides on Ipsen's personal devices, which are beyond WLJ's control and subject to no litigation hold.

### E.     Defendants' Refusal to Return Confidential Materials.

On July 6, 2026, Plaintiffs' counsel sent a cease-and-desist letter to Ipsen and Stock Point demanding they stop using and return all confidential information. Hughes Decl., ¶ 34, Ex. C. Defendants did not respond and have not returned any materials. *Id.* Stock Point continues to operate using WLJ's Strategic Plan, and Defendants retain WLJ's subscriber data. *Id.*, ¶ 29.

### III.     LEGAL STANDARD

Federal Rule of Civil Procedure 26(d)(1) provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized . . . by court order." Courts may authorize expedited discovery upon a showing of "good cause." *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.*

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY - 4

Courts in the District of Idaho apply a five-factor test to evaluate good cause: (1) whether a preliminary injunction is pending; (2) the breadth of the discovery request; (3) the purpose for requesting expedited discovery; (4) the burden on defendants to comply; and (5) how far in advance of typical discovery the request was made. *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1067 (C.D. Cal. 2009). Generally, good cause is found "where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Rovio Ent. Ltd. v. Royal Plush Toys, Inc.*, 907 F. Supp. 2d 1086, 1099 (N.D. Cal. 2012).

"District courts in the Ninth Circuit regularly permit expedited discovery in cases that, like this one, implicate claims of improper use of confidential information or trade secrets." *Citibank, N.A. v. Mitchell*, No. 24-cv-08224-CRB, 2024 U.S. Dist. LEXIS 215481, at *19 (N.D. Cal. Nov. 26, 2024).

## IV.    ARGUMENT

All five factors of the good-cause analysis weigh in favor of granting expedited discovery.

### A.    Preliminary Injunction is Pending.

Plaintiffs have filed a concurrent Motion for Temporary Restraining Order and Preliminary Injunction. Expedited discovery is essential to minimize harm. *See*, e.g., *Comet Techs. USA Inc. v. Beuerman*, No. 18-CV-1441-LHK, 2018 U.S. Dist. LEXIS 224356, 2018 WL 1990226, at *7 (N.D. Cal. Mar. 15, 2018) ("Quickly determining what information Defendant removed from Plaintiff, and whether and how Plaintiff's information is being used by Plaintiff's competitors is essential in order to minimize any harm to Plaintiff's competitive position.") Targeted expedited discovery is appropriate and favored when a preliminary injunction is pending. *See Citibank*, 2024 U.S. Dist. LEXIS 215481, at *19.

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY - 5

Expedited discovery will enable Plaintiffs to establish, with greater specificity, the scope of misappropriation and the extent of ongoing harm—information directly relevant to the Court's evaluation of the TRO/PI motion. Without discovery, the Court must evaluate the injunction motion based solely on Plaintiffs' existing evidence, which necessarily cannot capture what Defendants have done with the stolen information in private.

**B.      The Discovery Requests are Narrowly Tailored.**

Plaintiffs' proposed discovery is targeted specifically to the core issues: what WLJ information Defendants possess, how it has been used to build Stock Point, and where that information currently resides. Plaintiffs propose:

- Up to 15 interrogatories focused on identification of devices used, persons with access to WLJ data, and the timeline of Stock Point's development;

- Up to 15 requests for production targeting communications about Stock Point's formation, documents containing WLJ subscriber data or Strategic Plan elements, and device access logs;

- Up to 15 requests for admission addressing undisputed foundational facts (e.g., Stock Point's formation date, domain registration timing, subscriber list export);

- Rule 30(b)(6) deposition of Stock Point on limited topics;

- Deposition of Ipsen;

- Limited third-party subpoenas (5) to domain registrars, email providers, and cloud storage services for metadata and access logs; and

- Forensic imaging of Ipsen's personal phone and computer to preserve ESI at risk of spoliation.

This discovery does not seek to probe the entirety of Defendants' business operations. It is confined to determining what WLJ information Defendants possess and how it has been used— the minimum necessary to support Plaintiffs' injunction motion and protect against ongoing harm.

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY - 6

## V.   THE PURPOSE FOR REQUESTING EXPEDITED DISCOVERY IS LEGITIMATE

**A.   Spoliation Concerns Regarding Personal Devices.**

The most urgent basis for expedited discovery is the imminent risk of spoliation. Ipsen conducted WLJ business on personal devices that are now in his exclusive possession and control:

1.   **Personal Phone:** Ipsen used his personal phone to send the June 16, 2026 text messages to Oldcorn through which he obtained the 11,719-contact Email List under false pretenses. Oldcorn Decl., ¶ 4, Ex. A. His personal phone likely contains additional communications regarding Stock Point's formation, solicitation of WLJ employees, and use of WLJ's confidential information.

2.   **Personal Computer:** Ipsen used his personal MacBook during the April 19, 2026 meeting with Dare Lovett, accessing and bookmarking the confidential Seed Stocked website. Lovett Decl., ¶ 5. This device likely contains downloads of WLJ data, drafts of Stock Point content created while Ipsen was still employed by WLJ, and evidence of how the Strategic Plan was used to build Stock Point.

No litigation hold is in place on these devices. Ipsen has shown willingness to deceive—he obtained the Email List under false pretenses and formed a competing company in secret. There is no reason to believe he would preserve evidence that demonstrates his misconduct. Every day that passes increases the risk that text messages are automatically deleted, browser histories are cleared, files are moved or overwritten, and cloud accounts are modified.

*See Citibank*, 2024 U.S. Dist. LEXIS 215481, at *19 (granting expedited discovery including forensic preservation where trade secrets resided on personal devices).

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY - 7

**B.     Defendants' Willful Disregard of Cease and Desist.**

Defendants' refusal to respond to the July 6, 2026 cease-and-desist letter compounds the spoliation concern. Hughes Decl., ¶ 34. A party who ignores a demand to return stolen property and continues operating an illegally established business cannot be trusted to voluntarily preserve evidence. Defendants have had a month to comply and have affirmatively chosen not to. This willful disregard demonstrates the necessity of court-ordered discovery to compel what voluntary compliance has failed to achieve.

**C.     Misappropriation of Valuable Proprietary Information.**

The evidence already in Plaintiffs' possession demonstrates that Defendants possess WLJ's trade secrets and are actively using them. The Stock Point website replicates the confidential Strategic Plan's elements (Seed Stocked directory, reduced-frequency publication model, interactive map, news aggregation model). Lovett Decl., ¶¶ 7-11, Exs. B-H. Stock Point claims "21,000 READERS"—a figure attainable only through use of WLJ's subscriber data. *Id.*, ¶ 10, Ex. G. Expedited discovery will reveal the full scope of misappropriation that Plaintiffs cannot determine from publicly available information alone.

## VI.     THE BURDEN ON DEFENDANTS IS MINIMAL

Stock Point is a newly formed company that has been operational for approximately five weeks. It has minimal operations and few employees. The burden of responding to narrowly tailored discovery—particularly the largely factual requests for admission and straightforward document production—is minimal.

As to forensic imaging of personal devices, courts order such relief in trade secret cases where, as here, there is strong evidence of misappropriation and ESI resides on personal devices. *See, e.g., Citibank*, 2024 U.S. Dist. LEXIS 215481, at *19. And where the discovery sought is

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY - 8

appropriately narrow. *See United States Legal Support, Inc. v. Beverly*, No. 5:25-cv-00218-SSS-SPx, 2025 U.S. Dist. LEXIS 123234, at *14 (C.D. Cal. Jan. 30, 2025). Here, any burden is outweighed by the risk that critical evidence will be lost and because Plaintiffs seek appropriately narrow discovery.

## VII.    THE REQUEST IS MADE ONLY MARGINALLY AHEAD OF NORMAL DISCOVERY

This action was filed concurrently with this Motion. Discovery would ordinarily begin within weeks of the Rule 26(f) conference. Plaintiffs' request merely accelerates that timeline by a matter of weeks—a minimal advancement that is justified by the exigent circumstances of ongoing misappropriation and the imminent risk of evidence destruction. And, provided other factors are favorable to the plaintiff, courts will grant discovery even when the requests are made concurrent with the filing of the complaint. *See United States Legal Support, Inc. v. Beverly*, No. 5:25-cv-00218-SSS-SPx, 2025 U.S. Dist. LEXIS 123234, at *14 (C.D. Cal. Jan. 30, 2025).

## VIII.    PROPOSED DISCOVERY REQUESTS

Plaintiffs propose the following discovery, which is narrowly tailored to the issues raised by the pending TRO/PI motion and the need to preserve evidence at risk of spoliation:

A.    **Written Discovery.**

1.    **Interrogatories (15):** Directed to Defendants, addressing: identification of all devices used to access or store WLJ information; all persons who have had access to the Subscriber List, Email List, or Strategic Plan since March 6, 2026; communications regarding Stock Point's formation and development; use made of WLJ's subscriber data; and the timeline of Stock Point's website development.

2.    **Requests for Production (15):** Targeting: communications regarding Stock Point's formation and business planning; documents containing or derived from

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY - 9

WLJ's Subscriber List or Email List; documents reflecting elements of WLJ's Strategic Plan; device access logs and records; and marketing materials or business plans for Stock Point.

**3.** **Requests for Admission (15):** Addressing foundational facts: Stock Point's formation on March 6, 2026; receipt of the Strategic Plan on April 19, 2026; domain registration timing; the subscriber list export request and its pretextual basis; and Defendants' refusal to return materials.

## B. Depositions

Plaintiffs seek to depose Ipsen (individual) and Stock Point pursuant to Rule 30(b)(6) on limited topics: the formation and development of Stock Point, the use of WLJ information, and the current location of WLJ's confidential data.

## C. Third-Party Subpoenas (5)

Limited subpoenas to: (1) Squarespace Domains LLC (domain registration records for stockpointmedia.com); (2) Google Cloud/Firebase (hosting records); (3) email service providers (account creation and access logs for Stock Point accounts); (4) cloud storage providers used by Ipsen; and (5) financial institutions (Stock Point formation funding records).

## D. Forensic Preservation of Personal Devices

Plaintiffs request that the Court order the forensic imaging of: (1) Ipsen's personal phone (used for the June 16, 2026 text messages obtaining the Email List); (2) Ipsen's personal computer/MacBook (used during the April 19, 2026 meeting and likely used to develop Stock Point); and (3) cloud accounts associated with these devices. Forensic imaging would be conducted by a neutral third-party forensic examiner, with a protocol to protect privileged and personal information through keyword filtering and review by a special master or the Court.

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY - 10

## IX.    CONCLUSION

Good cause exists for expedited discovery. A preliminary injunction is pending; the discovery is narrowly tailored; the purpose is legitimate and urgent (preservation of ESI at imminent risk of spoliation and support for the pending injunction motion); the burden on Defendants is minimal; and the request is only marginally ahead of the normal discovery schedule. Plaintiffs respectfully request that this Court grant their Motion for Expedited Discovery and authorize the discovery outlined above.

DATED:  August 5, 2026

HOLLAND & HART LLP

By: */s/Erik F. Stidham*
      Erik F. Stidham
      Jennifer M. Aiko

      Attorneys for Plaintiffs

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY - 11