UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN LIVESTOCK JOURNAL, LLC, an Oklahoma limited liability company and SUPERIOR LIVESTOCK AUCTION, LLC an Oklahoma limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>LOGAN M. IPSEN, an individual and STOCK POINT MEDIA GROUP, LLC, an Idaho limited liability company,<br><br>Defendants. | Case No. 1:26-cv-00500-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

On August 5, 2026, Plaintiffs Western Livestock Journal, LLC and Superior Livestock Auction, LLC filed this action along with two motions: (1) a motion for temporary restraining order and preliminary injunction; and (2) a motion to expedite discovery. *See* Dkts. 3, 4. The Court has scheduled a hearing on the motion for injunctive relief for Tuesday, September 15, 2026. In an effort to streamline matters, the Court will resolve the discovery motion in advance of the hearing.

For the reasons explained below, the Court will grant the motion for expedited discovery. Then, as Plaintiffs have requested, the Court will wait until the conclusion of expedited discovery before conducting an evidentiary hearing on the motion for a preliminary injunction. The September 15 hearing will thus be limited: The Court will hear argument on whether it should issue a temporary restraining order during the interim period, while expedited discovery proceeds and before the evidentiary hearing. *See Reply*, Dkt. 23, at 2; *Reply*, Dkt. 24, at 1.

## BACKGROUND

Western Livestock Journal describes itself as a "100-year-old legacy brand livestock industry publication serving seedstock producers, auction markets, ranchers, and agricultural businesses across the western United States." *Comp.* ¶ 5, Dkt. 1. "Its offerings include news coverage of the western livestock industry, market reports, sale calendars (bull sales, production sales), and advertising services to a targeted audience in the livestock sector." *Id.* Plaintiff Superior Livestock Auction, LLC purchased WLJ in 2022. Defendant Logan Ipsen, who had worked with WLJ since 2012, remained with the company as its president[1] after

[1] Plaintiffs say that in addition to serving as WLJ's president, he also served as a "manager." Ipsen disputes that. The Court does not need to resolve that dispute to decide the motion for expedited discovery.

the acquisition.

On June 29, 2026—roughly four years after Superior Livestock purchased WLJ—Ipsen resigned. In the months before his resignation (and while Ipsen was still employed with WLJ), Ipsen and his wife formed Defendant Stock Point Media Group, LLC, a competing livestock-industry publication. Plaintiffs allege that Ipsen stole WLJ's trade secrets and confidential information and then used that information to establish Stock Point. WLJ alleges that its trade secrets and confidential information include the following: (1) *a subscriber list,* which includes the names and mailing addresses of all past and present print subscribers, including additional information about some of these subscribers, such as phone numbers, email addresses, notes about key contacts, etc.; (2) *an email contact list,* which contains subscriber email addresses and corresponding information about which email newsletters and e-blasts each subscriber has opted to receive; and (3) *a* "*Confidential Strategic Plan*." *See Comp.* ¶¶ 17-33, Dkt. 1.

The week after Ipsen resigned, Plaintiffs sent a cease-and-desist letter to defendants, demanding, among other things, the return of WLJ's trade secrets and confirmation information. *See Hughes Dec.* ¶ 34. Ex. C thereto, Dkt. 4-9. Defendants did not respond and allegedly have not returned any of the information. This lawsuit ensued.

As noted above, Plaintiffs have also filed a motion for injunctive relief and a

motion to expedite discovery. This decision is restricted to resolving the discovery motion.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(d)(1) generally prohibits a party from seeking discovery before the Rule 26(f) conference, but such discovery is permitted when authorized by court order.[2] Although the Ninth Circuit has not articulated a standard governing requests for expedited discovery under Rule 26(d)(1), district courts within the Circuit have required a showing of good cause. *See, e.g., Semitool, Inc. v. Tokyo Electron Am., Inc.,* 208 F.R.D. 273, 276 (N.D. Cal. 2002). Good cause exists "where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.*

In determining whether good cause exists, courts often consider five factors: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery request; (3) the purpose for requesting expedited discovery; (4) the burden on defendants to comply; and (5) how far in advance of typical discovery the request

---

[2] Federal Rule of 26(d)(1) provides: "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except … when authorized by these rules, by stipulation, or by court order."

was made." *Am. LegalNet, Inc. v. Davis,* 673 F. Supp. 2d 1063, 1067 (C.D. Cal. 2009). The parties agree that this is the appropriate framework for evaluating Plaintiffs' request.

## ANALYSIS

### A. Plaintiffs' Request for Expedited Discovery

Plaintiffs seek permission to conduct the following expedited discovery:[3]

- Mr. Ipsen's deposition, within 14 days of the Court's Order;
- A Rule 30(b)(6) deposition of Stock Point on the limited topics relevant to the motion for injunctive relief, within 14 days of the Court's Order;
- Five third-party subpoenas to domain registrars, email providers, and cloud storage services for metadata and access logs, which Defendants do not oppose, with a return date consistent with Federal Rule of Civil Procedure 45;
- Up to 15 interrogatories, which Defendants do not oppose, with responses due within 14 days of service;
- Up to 15 requests for admission directed to foundational facts, including Stock Point's formation date, the timing of the domain registration, the export of the Subscriber List, and the June 16, 2026 transmission of the Email List, with responses due within ten days of service;
- Examination, by a Plaintiffs' expert or a neutral examiner selected jointly or appointed by the Court, of forensic images

[3] The description of the proposed discovery changed somewhat between the opening brief and the reply brief. Here, the Court refers to the discovery proposed in the reply memo.

of the six devices Defendants have identified—including the MacBook purchased by Stock Point, Ms. Ipsen's MacBook, and her external hard drive—together with the associated cloud and email accounts, to be completed within twenty-one days of the Court's Order and subject to the protocol described below [i.e., a Court-approved protocol, which would be adopted after the parties submit a stipulated proposal, or they submit competing proposals]; and

- Up to 15 requests for production concerning the formation and funding of Stock Point, WLJ subscriber and email data, the sources and development of Stock Point's mailing and email lists, Stock Point's subscriber list for comparison with WLJ's, device and account access logs, and communications concerning Mr. Ipsen's resignation, the formation of Stock Point, and any solicitation of WLJ employees or contractors, with responses due within ten days of service.

*Reply*, Dkt. 24, at 4-5.

In response, Defendants generally say "they do not shy away from moving discovery forward in this case on an expedited basis and in a fair way." *Response,* Dkt. 10, at 6. Indeed, they have already proactively delivered "all relevant devices" (two cellphones, three computers and an external hard drive) for forensic copying. *Id.*; *see also Sawyer Dec.* ¶ 5, Dkt. 12-16. They say they have also complied with their Rule 26(a)(1) initial disclosure obligations despite not yet having conducted the meet-and-confer conference and without an "ESI" order in place. *See Response*, Dkt. 10, at 6. Nonetheless, defendants say the motion should be denied because there is no good cause for expedited discovery and, moreover, some of the

proposed requests have been rendered moot by their Rule 26(a)(1) disclosures and the declarations they have submitted confirming preservation of evidence. *See Response,* Dkt. 10, at 7.

The Court is not persuaded. Rather, after considering the five factors listed above, the Court finds good cause to grant Plaintiffs' request for expedited discovery.

**1. Factor 1: The Pendency of Plaintiffs' Motion for Injunctive Relief**

The first factor—whether a motion for injunctive relief is pending—favors granting expedited discovery. Plaintiffs' motion for injunctive relief is pending, and they persuasively argue that expedited discovery would aid them in their effort to "establish with greater specificity, the scope of misappropriation and the extension of ongoing harm . . . ." *Mtn. Mem.*, Dkt. 3-1, at 6. In response, Defendants say Plaintiffs have marshalled plenty of evidence and don't need anything else to support their motion. *Response,* Dkt. 10, at 8-9.

The Court is not persuaded. As plaintiffs have pointed out, although they were able to assemble evidence from their own records, evidence from Defendants will assist the Court in evaluating the parties' interests and the likelihood that Plaintiffs will prevail on the merits. Specifically, Plaintiffs point out that while they were able to establish that in June 2026, Ipsen repeatedly accessed the Subscriber List and requested the Email List, "they cannot establish what happened

next . . .” including, among other things, “[w]hether the list files were opened, copied, exported, or synced after June 16; how they reached the device Stock Point purchased; . . . . the source of Stock Point’s mailing list; and the content of Mr. Ipsen’s June 26, 2026 solicitation of WLJ salespeople . . . .” *Reply,* Dkt. 24, at 3. The Court agrees that the evidence Plaintiffs seeks in the expedited discovery will put the Court in a better position to evaluate the motion for injunctive relief.

**2. Factor 2: The Breadth of Plaintiffs’ Discovery Requests**

The second factor—the breadth of the discovery request—also supports granting the motion. The Court finds the proposed discovery requests to be targeted to the key issues presented in the motion for injunctive relief. More specifically, Plaintiffs accurately describe their proposed requests as reaching four questions: (1) What WLJ information Defendants and Stock Point possess? (2) How that information has been used in building and operating Stock Point? (3) Where it now resides, including on the identified devices and in the associated cloud and email accounts? and (4) What supports Defendants’ assertion that Stock Point’s mailing and email lists were developed independently of WLJ’s lists?” *Reply*, Dkt. 24, at 4. Granted, this discovery can’t be accomplished in a day, or even a week, but as summarized it appears to be targeted to elicit information and documents that are directly relevant to the request for injunctive relief.

**3. Factor 3: Plaintiffs’ Stated Purpose**

Plaintiffs' stated purpose supports allowing expedited discovery: They indicated a need to prevent spoliation (as related to personal devices) and to obtain information that "will reveal the full scope of misappropriation that Plaintiffs cannot determine from publicly available information alone." *Mtn. Mem.*, Dkt. 3-1. The spoliation concerns have been tempered by Defendants' proactive decision to turn over the devices for forensic preservation. *See Response,* Dkt. 10, at 5. Still, though, the Court is not persuaded that this voluntary action obviates the need for expedited discovery. Plaintiffs should still be permitted to examine the images under a protocol acceptable to both parties and to have their own expert examine the forensic images.

**4. Factors 4 & 5: Burden and the Degree to Which Plaintiffs Seek to Accelerate Discovery**

Finally, the Court agrees that the burden on defendants will be relatively minimal and that the timeline Plaintiffs propose is reasonable under the circumstances. If this action were proceeding under a non-expedited timeframe, the scheduling order would issue on or before October 26, 2026 (60 days from Defendants' appearance), and the Rule 26 conference would thus occur on October 5, 2026. Allowing plaintiffs to conduct discovery now isn't that far removed, then, from what would normally occur.

## B. Reciprocal Discovery

Defendants contend that if the Court allowed Plaintiffs' proposed expedited discovery, they should be afforded the same opportunity. Plaintiffs agreed, stating that "expedited discovery should be reciprocal and proceed under a protocol." *Reply,* Dkt. 24, at 6. Further, it appears that counsel have been working cooperatively on this issue, including by agreeing to engage in a Rule 26 conference this week and to promptly submit a stipulated ESI protocol or competing proposals.

Under these circumstances, the Court will simply direct the parties to continue their meet-and-confer efforts and to submit either a stipulated ESI proposal, or competing ESI proposals, within seven days of this Order. As far as the discovery Defendants wish to conduct, the Court will leave the scope and timing of such discovery for the parties to address in the first instance. The parties should attempt to reach agreement consistent with their shared position that expedited discovery should be reciprocal. To be clear, though, Plaintiffs are authorized to conduct the expedited discovery described above, and that authority is not contingent upon the parties agreeing upon the scope or timing of Defendants' expedited discovery.

## ORDER

**IT IS ORDERED that** Plaintiffs' Motion for Expedited Discovery (Dkt. 3)

is **GRANTED.** Accordingly:

1. Plaintiffs are authorized to conduct the expedited discovery described in Section A of this Order, subject to the deadlines and limitations set forth there. The parties are free to agree upon different timing, but if they are unable to do so, the timing specified above shall govern.
2. The parties shall continue their meet-and-confer efforts regarding an ESI protocol. **Within 7 days of this Order**, the parties shall submit either (a) a stipulated ESI protocol for the Court's approval or (b) competing proposed protocols identifying the issues that remain in dispute.
3. Defendants may conduct reciprocal expedited discovery. The parties shall meet and confer regarding the scope and timing of that discovery and shall attempt to resolve those matters without Court intervention.

UNITED STATES COURTS DISTRICT OF IDAHO

DATED: September 11, 2026

B. Lynn Winmill
U.S. District Court Judge